**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PETER CAHILL,<br><br>*Plaintiff,*<br><br>v.<br><br>ANIMAL CARE & CONTROL TEAM OF PHILADELPHIA, et al.,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 26-3727 |

**Pappert, J.** **July 28, 2026**

**MEMORANDUM**

A pack of pit bulls mauled Peter Cahill while he was walking through Fairmount Park, injuring him so severely that doctors, among other things, amputated both of his legs below the knee.

Cahill sued Animal Care & Control Team of Philadelphia and Fairmount Park Conservancy in the Philadelphia County Court of Common Pleas, and Fairmount joined the City of Philadelphia, Sean McAllister and unnamed police officers as defendants. Cahill then amended his complaint to allege negligence against all defendants, negligence *per se* against all defendants but McAllister and Fairmount, and a state-created danger claim under 42 U.S.C. § 1983 against all defendants but Fairmount. Defendants removed the case to this Court and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The Court grants the motions and dismisses the negligence claim with prejudice as to the City, McAllister and the unnamed officers, the negligence *per se* claim with prejudice, and the state-created danger claim without prejudice as to the unnamed

officer who allegedly instructed Cahill to walk in closer proximity to the dogs, but with prejudice as to the remaining defendants.

I

Around 1:06 a.m. on January 10, 2025, the Philadelphia Police Department received a call about five "vicious" pit bulls in Fairmount Park.[1] (Am. Compl. ¶ 14, Not. of Removal Ex. 2, Dkt. No. 1-4.) Police officers arrived forty minutes later along with personnel from Animal Care & Control Team of Philadelphia, which has a contract with the City of Philadelphia to manage and control dangerous dogs throughout Philadelphia. (*Id.* ¶¶ 15–17.) They caught several pit bulls, secured them in harnesses, and strapped two of them to a vehicle but, somehow, "lost control of all but one." *See* (*Id.* ¶ 73). They tried to catch the dogs by offering them food, blaring horns, and using sirens, buzzers and flashing lights, *see* (*id.* ¶¶ 19, 73), and Police Officer Sean McAllister fired a "warning shot" into the ground, *see* (*id.* ¶ 21). Their attempts to control the situation allegedly caused the dogs to "bec[o]me frightened, agitated and vicious" and attack one of the officers before retreating into "a defined area." *See* (*Id.* ¶¶ 19–20, 23, 74–75). ACCT Philly and PPD eventually "gave up and abandoned the scene" without closing the park or issuing warnings about the pit bulls. (*Id.* ¶¶ 25, 27.)

Nearly five hours later, Peter Cahill was walking in Fairmount Park while police were still responding "to reports of vicious dogs in the immediate area." (*Id.* ¶¶ 28–29, 65.) An unnamed officer instructed him to walk on the other side of the street, which happened to be "in the same general vicinity" where ACCT Philly and PPD had

---

[1] Fairmount Park Conservancy is a nonprofit organization responsible for park safety. (Am. Compl. ¶¶ 2, 18.)

previously reported and McAllister had fired his gun. (*Id.*) He never warned Cahill about pit bulls in the park. (*Id.*)

Cahill followed the officer's instructions, and, after an unknown period of time, the pit bulls attacked him. (*Id.* ¶ 29.) The attack purportedly lasted forty-five minutes, (Pl.'s Resp. in Opp'n to ACCT Philly at 8, Dkt. No. 9), and left him lying on the side of the road with "multiple deep dog bite wounds on [his] legs, arms, hands, and back," (Am. Compl. ¶¶ 30, 38.) A "Good Samaritan," who the dogs also attacked, stopped to help Cahill, and emergency services transported him to Penn Presbyterian Medical Center. (*Id.* ¶¶ 30–31.) Doctors amputated both his legs below the knee and placed skin grafts on his right thigh and forearm. (*Id.* ¶ 38.) Cahill also suffered nerve damage to his right hand and enduring mental and psychological trauma, all of which has required significant and continuing medical expenses. (*Id.*)

II

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted)

(quoting *Iqbal*, 556 U.S. at 675). Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

III

Cahill cannot bring state-law claims against the City, McAllister and the unnamed police officers because they are immune from suit. The Political Subdivision Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person . . . caused by the local agency or an employee thereof." 42 Pa. Stat. & Cons. Stat. Ann. § 8541. An employee of a local agency is liable for civil damages within the scope of his office or duties "only to the same extent as his employing local agency." *Id.* § 8545. The City is a local agency because it is "[a] government unit other than the Commonwealth government," *id.* § 8501, and the police officers are its employees, *see* (Am. Compl. ¶ 5).

Cahill cites an exception to the statute that doesn't apply. The exception pertains to "[t]he care, custody or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses." 42 Pa. Stat. & Cons. Stat. Ann. § 8542(b)(8). But Cahill never alleges facts showing the police had care, custody or control of the pit bulls. To the contrary, he claims the dogs were in

Fairmount Park forty minutes before any officers arrived. *See* (Am. Compl. ¶¶ 14–15). The police allegedly "failed to secure and/or control the group of now agitated dogs," (Am. Compl. ¶ 29), and "incompetently attempted to restrain, capture and/or control these vicious dogs," (*id.* ¶ 49.) "[S]tray dog[s]"—like the pit bulls—"cannot be considered animal[s] within the possession or control of the City." *Jenkins v. Kelly*, 498 A.2d 487, 488–89 (Pa. Commw. Ct. 1985). Holding otherwise "would expand the scope of the exception . . . far beyond its intended coverage." *Id.*

Cahill also cannot rely on his original complaint—as he does throughout his briefing. *See* (Pl.'s Resp. in Opp'n to the City at 8–10, 12–18, Dkt. No. 8); (Pl.'s Resp. in Opp'n to ACCT Philly at 8–10, 14–25). His "new pleading supersedes the old one," and "[t]he original pleading no longer performs any function in the case." *Royal Canin v. U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (citation modified and omitted).

IV

Nor can Cahill state a negligence *per se* claim against ACCT Philly. As he correctly points out, negligence *per se* is "a theory of negligence, not a standalone claim." *Clemens v. ExecuPharm, Inc.*, 678 F. Supp. 3d 629, 636 (E.D. Pa. 2023) (collecting cases). The theory allows a plaintiff "to show that the [defendants] breached [their] duty to behave as a reasonable person" "through [their] violation of a statute or ordinance." *Id.* (quoting *McCloud v. McLaughlin*, 837 A.2d 541, 545 (Pa. Super. Ct. 2002)). To do so, the plaintiff must allege facts plausibly showing: (1) "[t]he purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally," (2) the statute "must clearly apply to the conduct of the defendant," (3) the defendant must violate the statute and (4) the violation must be

the proximate cause of the plaintiff's injuries. *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. Ct. 2014) (citation omitted); *Mest v. Cabot Corp.*, 449 F.3d 502, 518 (3d Cir. 2006).

Cahill bases his claim on the Pennsylvania Dog Law. (Am. Compl. ¶¶ 52, 54–56); (Pl.'s Resp. in Opp'n to ACCT Philly at 12–14.) But the Dog Law "precludes enforcement by private individuals." *Lerro ex rel. Lerro v. Upper Darby Township*, 798 A.2d 817, 822 (Pa. Commw. Ct. 2002). "To the extent [ACCT Philly] failed to fulfill its duty under the State Dog Law, it is the responsibility of the Secretary of Agriculture to take appropriate action." *Id.* Indeed, "the absence of a private cause of action in [the Dog Law] is an indicator that the statute did not contemplate enforcement of private harms." *Wagner v. Anzon, Inc.*, 684 A.2d 570, 575 (Pa. Super. Ct. 1996); *see also Copenhaver v. Borough of Bernville*, No. 2-8398, 2003 WL 26616224, at *4 (E.D. Pa. Jan. 10, 2003) (dismissing a negligence *per se* claim with prejudice "because there is no private right of action under the Pennsylvania Dog Law").

Moreover, the statute was intended to protect the public generally rather than plaintiffs like Cahill:

> It shall be the duty of every police officer, state dog warden, employee of the department or animal control officer to seize and detain any dog which is found running at large, either upon the public streets or highways of the Commonwealth, or upon the property of a person other than the owner of the dog, and unaccompanied by the owner or keeper.

3 Pa. Stat. & Cons. Stat. Ann. § 459-302(a). As Cahill acknowledges, the statute imposes a "duty to carry out such prudent care for the protection of health and safety of the public." (Am. Compl. ¶ 46); *see also Mest*, 449 F.3d at 518 (rejecting a negligence *per se* claim based on the Pennsylvania Air Pollution Control Act because the statute

governed air quality which, by its nature, is directed at the population in general); *Wagner*, 684 A.2d at 574 (same with the Philadelphia Air Management Code).

V

Section 1983 allows a plaintiff to sue a person acting under color of state law who violated his constitutional rights. 42 U.S.C. § 1983. Cahill claims the City, McAllister, ACCT Philly, and unnamed police officers violated his Fourteenth Amendment rights by agitating the pit bulls, abandoning Fairmount Park, and instructing him to walk in an area where officers had previously tried to capture the dogs. *See* (Am. Compl. ¶¶ 62–69).

A

As an initial matter, Cahill cannot bring a § 1983 claim against ACCT Philly because he does not allege facts establishing it acted under color of state law. ACCT Philly is a private entity, *see* (*Id.* ¶ 2), and such a defendant can be a state actor only where there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself," *Leshko v. Servis*, 423 F.3d 337, 347 (3d Cir. 2005) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). The Third Circuit Court of Appeals uses three tests to determine whether state action exists: (1) the private entity exercised powers that are traditionally the exclusive prerogative of the state, (2) the private party acted with the help of or in concert with state officials and (3) the state "so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

Cahill never contends ACCT Philly satisfies any of these tests, let alone alleges facts plausibly suggesting it was a state actor under § 1983. He merely says, in conclusory fashion, that ACCT Philly was a "state actor[]" and "act[ed] under color of state law." *See* (Am. Compl. ¶¶ 61, 76); (Pl.'s Resp. in Opp'n to ACCT Philly at 20 (same)).

B

Even if all defendants were state actors, the state-created danger claim would still fail. The Fourteenth Amendment generally does not protect against attacks by private citizens or animals. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). A "state-created danger" claim is an exception to this rule. *See Johnson v. City of Philadelphia*, 975 F.3d 394, 398–99 (3d Cir. 2020). To state such a claim, a plaintiff must allege: (1) he suffered a "foreseeable and fairly direct" harm, (2) the defendants "acted with a degree of culpability that shocks the conscience," (3) he was a "foreseeable victim" or a "member of a discrete class of persons" potentially harmed by their actions and (4) the defendants "affirmatively used [their] authority" to "create[] a danger" to him or to make him "more vulnerable to [the] danger than had the state not acted at all." *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (citation modified and omitted).

1

a

To adequately plead foreseeability, a plaintiff must allege "an awareness on the part of the state actors" that amounts to "actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. County of*

*Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). The defendants must have "sufficiently concrete information about the risk of violence presented by the perpetrator . . . to put [them] on notice of the harm that might result" from their wrongful conduct. *Id.*

Cahill alleges enough facts with respect to ACCT Philly and the police officers who initially responded to Fairmount Park. PPD received a call about five "vicious" pit bulls there, and those defendants responded to the scene. (Am. Compl. ¶ 14.) They saw the dogs "exhibiting vicious, menacing and dangerous behavior," (*id.* ¶ 24), all of which purportedly became worse after they didn't capture them, *see* (*id.* ¶¶ 19, 24–25). The pit bulls even attacked an animal control officer. *See* (*Id.* ¶ 20). So they had actual knowledge about "the danger posed by" the pit bulls. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997).

The same is not true for the unnamed officer who instructed him to walk in closer proximity to where the dogs were. The Amended Complaint allows for the inference that the officer was a part of another response "to reports of vicious dogs in the immediate area" around 6:30 a.m. (*Id.* ¶¶ 29, 65.) But that does not tend to show the officer had "sufficiently concrete information" about the risk of violence the pit bulls presented. *Phillips*, 515 F.3d at 238. Cahill never alleges the officer knew anything about the pit bulls, much less their "violent propensities." *Morse*, 132 F.3d at 908. And knowing about "vicious dogs" in the park generally does not provide the officer with sufficient notice about how dangerous the pit bulls were. *See, e.g.*, *id.* at 909 (rejecting a state-created danger claim where the plaintiff never alleged the defendants knew a school shooter posed a threat to anyone at the school).

Cahill's other allegations are insufficient as well. ACCT Philly and PPD "abandoned the scene," (Am. Compl. ¶ 27), and the officer was in Fairmount Park over five hours later, (*id.* ¶ 29.) So the unnamed officer was not plausibly part of the initial response. Although PPD had previously received calls about dogs in Fairmount Park, *see* (*id.* ¶ 26), Cahill doesn't cite any "prior incidents with similar circumstances" to put the officer on notice of a risk of violence to Cahill, *see Lesher v. Zimmerman*, 822 F. App'x 116, 120 (3d Cir. 2020); *Morse*, 132 F.3d at 908.

b

Even if the attack was foreseeable, Cahill must allege it was a "fairly direct result" of the defendants' conduct. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 245 (3d Cir. 2016) (citation omitted). Their conduct must have "precipitated" the attack—that is, "cause[d]" it "suddenly, unexpectedly, or too soon." *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013) (citation modified and omitted). This standard is "unavoidably fact specific," *see Phillips*, 515 F.3d at 239, and requires a "direct causal connection" between the alleged misconduct and the subsequent harm, *see Morse*, 132 F.3d at 909.

Nothing in the Amended Complaint implies anyone associated with ACCT Philly or PPD—except the unnamed officer—knew who Cahill was. Put simply, he was "a random individual who 'happened' to be in the path of danger." *Phillips*, 515 F.3d at 240; *Morse*, 132 F.3d at 910 (finding a plaintiff had not met the fairly direct requirement where the defendants "were unaware that any mentally deranged person, let alone [the perpetrator], was waiting . . . for an opportunity to cause harm"); *see also A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125, 128 (3d Cir. 2016) (same where the plaintiff was the "tragic victim of random criminal conduct" (citation omitted));

*LaGuardia v. Ross Township*, 705 F. App'x 130, 133–34 (3d Cir. 2017) (holding that a "harm was a direct result of only the actions" of a school shooter where the shooter randomly shot and killed several people).

Cahill's injuries were also "too attenuated" from the defendants' actions to support liability. *Morse*, 132 F.3d at 908. The pit bulls were vicious before ACCT Philly or PPD arrived. (Am. Compl. ¶ 14.) Officers responded to Fairmount Park at 1:48 a.m., *see* (*id.* ¶ 15), but the dogs attacked Cahill over five hours later, *see* (*id.* ¶ 29). Even if the police agitated the dogs, the "lengthy period of time and intervening forces and actions" separate their alleged misconduct from his subsequent harm. *Henry*, 728 F.3d at 285.

Similar reasons doom the claim against the unnamed officer. Cahill only alleges the officer instructed him to walk on the other side of the road, which happened to be "in the same general vicinity" where the other defendants had previously responded. (Am. Compl. ¶ 29.) Nowhere does he say how much time passed between the officer's instruction and his attack. He never suggests the officer knew where the pit bulls were or whether other officers had tried to capture them in that location hours earlier. At best, the officer's actions "set into motion a chain of events that result[ed] in harm," but they did not "precipitate or were the catalyst for the harm for which [Cahill] brings suit." *Henry*, 728 F.3d at 283 (citations omitted and modified).

2

Even if Cahill satisfied the first element, the defendants did not "act[] with a degree of culpability that 'shocks the conscience.'" *Phillips*, 515 F.3d at 240 (citation omitted). "The exact degree of wrongfulness necessary to reach the

'conscience-shocking' level depends upon the circumstances of a particular case." *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999). The Third Circuit uses three standards based on the time state actors have to deliberate: (1) intent to cause harm, (2) gross negligence or arbitrariness or (3) deliberate indifference. *See Phillips*, 515 F.3d at 240–41. Deliberate indifference is "the easiest standard for a plaintiff to meet," *Quinn v. Badolato*, 709 F. App'x 126, 130 (3d Cir. 2017), and requires a "conscious disregard of a substantial risk of serious harm." *L.R.*, 836 F.3d at 246 (citation omitted). In the absence of actual knowledge, "deliberate indifference might exist . . . when the risk is so obvious that it should be known." *Phillips*, 515 F.3d at 241 (citation omitted). "Mere negligence is not enough to shock the conscience." *Sanford v. Stiles*, 456 F.3d 298, 311 (3d Cir. 2006).

Because Cahill does not plausibly allege deliberate indifference, the easiest standard, he cannot state a claim. ACCT Philly and PPD responded to Fairmount Park soon after receiving a call about "vicious" pit bulls, (Am. Compl. ¶¶ 14–15), and captured several of them before all but one escaped, *see* (*id.* ¶ 73). They tried to restrain the dogs again by using a variety of tactics, including—for whatever reason—firing a "warning shot" into the ground. (*Id.* ¶¶ 19, 21). Their attempts purportedly "incit[ed]" the dogs, (*id.* ¶ 25), and ACCT Philly and PPD "abandoned" the scene only after the dogs "retreated into a defined area," *see* (*id.* ¶¶ 25, 75). None of those allegations amount to a conscious disregard of a substantial risk of serious harm. At worst, Cahill alleges ACCT Philly and PPD acted negligently, which is not enough for a state-created danger claim. *See Sanford*, 456 F.3d at 311 (finding that a counselor was not deliberately indifferent where she didn't report a note from a student discussing

suicide and the student committed suicide a week later); *Nicini v. Morra*, 212 F.3d 798, 812 (3d Cir. 2000) (finding that a social worker was not deliberately indifferent where he didn't properly investigate members of a potential foster family for sexual abuse).

Nor does he succeed against the unnamed officer for two reasons. First, deliberate indifference requires "a danger that must at least be foreseeable," *see Morse*, 132 F.3d at 910, and Cahill does not satisfy that element, *see supra* subsection V.B.1.a. Second, the officer did not consciously disregard a substantial risk by instructing him to cross the street. Again, Cahill never alleges the officer knew the location of the pit bulls, let alone the danger they posed to anyone walking on that side of the street.

3

To state the third element of a state-created danger claim, Cahill must allege he "was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." *Bright*, 443 F.3d at 281 (citation modified and omitted). The relationship between the state and himself must be "sufficiently close," *Rivas v. City of Passaic*, 365 F.3d 181, 197 (3d Cir. 2004), and the parties must have "some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense," *Phillips*, 515 F.3d at 242 (citation omitted). But this element is not satisfied "[w]here the state actor creates only a threat to the general population." *Morse*, 132 F.3d at 913–14.

ACCT Philly and PPD did not have a "sufficiently close"—or any—relationship with Cahill. *Rivas*, 365 F.3d at 197. They arrived in Fairmount Park at 1:48 a.m., (Am. Compl. ¶ 15), and he was walking there five hours later, (*id.* ¶ 29.) Nothing in the Amended Complaint indicates those defendants had any contact with Cahill. *Cf. L.R.*,

836 F.3d at 247 (finding a child to be a foreseeable plaintiff where a school decided to release him to an abuser); *Phillips*, 515 F.3d at 243 (finding murder victims to be foreseeable plaintiffs where 911 operators illegally shared their address information to a homicidal colleague); *Kneipp v. Tedder*, 95 F.3d 1199, 1209 (3d Cir. 1996) (finding a woman to be a foreseeable plaintiff where a police officer let her walk home, visibly intoxicated and in the cold). And Cahill "provide[s] nothing that sets [him] apart from the general population of potential victims" that may have been walking through Fairmount Park that morning. *Long v. County of Armstrong*, 679 F. App'x 221, 224 (3d Cir. 2017).

The unnamed officer is a closer call. Even so, the Court need not address this element for now because Cahill does not state a claim based on the other elements. *See Morse*, 132 F.3d at 914.

4

Cahill must finally allege facts showing the defendants took an "affirmative action" that "created a danger to [himself] or rendered [him] more vulnerable to danger than if the state had not acted at all." *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007). "This element is often contested because of the inherent difficulty in drawing a line between an affirmative act and a failure to act." *L.R.*, 836 F.3d at 242. Rather than choosing between an act and omission, courts "first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then ask whether the state actor's exercise of authority resulted in a departure from that status quo." *Id.* at 243. "[A]n alleged failure *to do something*, standing alone, cannot be a basis for a state-created danger claim." *Johnson*, 975 F.3d at 401.

Cahill does not plausibly allege ACCT Philly and PPD took affirmative acts. He primarily argues they failed to secure the pit bulls, *see* (Am. Compl. ¶¶ 20, 22, 25, 29, 73), and failed to barricade the park or issue warnings, *see* (*id.* ¶¶ 27–28, 69). But their failures to "remediate an allegedly known risk does not constitute an affirmative act that satisfies the fourth element of a state-created danger claim." *K.W. ex rel. White v. Se. Pa. Transp. Auth.*, 760 F. App'x 104, 108 (3d Cir. 2019). Cahill's "attempts to redefine clearly passive inaction as affirmative acts" don't work. *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013).

Cahill next cites the tactics ACCT Philly and PPD used to capture the pit bulls, but those too fail. An affirmative act usually involves "conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002); *Henry*, 728 F.3d at 284 (describing *Ruiz*'s holding on affirmative conduct as "instructive"). The conduct "should be directed at a discrete plaintiff." *Ruiz*, 299 F.3d at 1183. The tactics here are too attenuated and indirect to qualify as affirmative acts. They presented an alleged "threat of an indefinite range and duration" and equally affected anyone walking through Fairmount Park that day. *Id.* So their actions were not "directed at [Cahill] which, in and of itself, placed [him] in danger." *Id.*

The allegations against the unnamed officer are also insufficient. Cahill alleges the officer instructed him to walk on the other side of the street, purportedly closer to the general area where the dogs were, and never warned him about the pit bulls. (Am. Compl. ¶¶ 29, 65, 69.) "But as our precedent holds, assurances and failures to warn are not affirmative acts." *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022). Even if the

instruction counts as an affirmative act, Cahill must allege the officer placed him "in a dangerous position that was foreseeable," *Morse*, 132 F.3d at 915; *Bright*, 443 F.3d at 283 n.7, and he has not done so, *see supra* subsection V.B.1.a.

C

Without an underlying constitutional violation, Cahill cannot state a *Monell* claim against the City. Section 1983 permits a municipality to be held liable if the plaintiff establishes the municipality's "policy" or "custom" led to a violation of the plaintiff's constitutional rights. *See Monell*, 436 U.S. at 694–95. It is "well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013); *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Even if he had established a plausible constitutional violation, Cahill does not allege facts which could establish a claim against the City. He relies on conclusory allegations that the City improperly trained, supervised and managed police officers and didn't have an adequate policy on dangerous dogs. *See* (Pl.'s Resp. in Opp'n to the City at 20–21, 29); (Am. Compl. ¶¶ 47, 70).

VI

Courts should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). "Futility" means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

It would be futile for Cahill to attempt to amend most of his claims. The City and its police officers are immune from Cahill's state-law claims, *see supra* Part III, and the Dog Law cannot support a negligence *per se* claim, *see supra* Part IV. And amendment would be futile on his state-created danger claim as to ACCT Philly, McAllister and the unnamed officers who initially responded because Cahill cannot satisfy the necessary elements. *See supra* Part V.

Amendment would not be futile, however, with respect to the unnamed officer. Cahill's current allegations are insufficient and conclusory, but the Court cannot say "beyond a doubt that there are no facts to support relief." 3 *Moore's Federal Practice* § 15.15[3] (2006). So Cahill may amend that claim consistent with this Memorandum and to the extent he can allege facts sufficient to state a plausible claim for relief.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.